**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| FELICIA N. BROWN,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | CAUSE NO.: 3:25-CV-668-TLS |

**OPINION AND ORDER**

The Plaintiff Felicia N. Brown seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. The Plaintiff argues that the Administrative Law Judge (ALJ) failed to evaluate social limitations assessed by state agency psychologists, resulting in an RFC not supported by substantial evidence. For the reasons set forth below, the Court finds that substantial evidence supports the ALJ's decision and affirms the decision.

**PROCEDURAL BACKGROUND**

On August 22, 2013, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning on June 2, 2010. AR 290, ECF No. 6. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before an ALJ on September 10, 2014. AR 59. On January 22, 2015, the Plaintiff presented for another administrative hearing. AR 102. On April 1, 2015, the ALJ issued an unfavorable decision. AR 36. The Appeals Council denied the Plaintiff's request for review on August 25, 2015. AR 15. On October 30, 2015, the Appeals Council set aside its decision and again denied the Plaintiff's

request for review. AR 1. The Plaintiff filed a complaint in this Court, and the Court remanded for further proceedings on January 17, 2017. AR 1253.

On August 8, 2017, an administrative hearing was held before an ALJ, who issued an unfavorable decision on August 28, 2017. AR 1039, 1313. The Plaintiff again filed a complaint with this Court, which reversed and remanded for further proceedings on December 12, 2018. AR 1584. On January 11, 2019, the Appeals Council remanded for further proceedings. AR 1587. On May 21, 2019, an administrative hearing was held before an ALJ, who issued an unfavorable decision on July 2, 2019 ("third ALJ decision"). AR 1490, 1744. The Plaintiff filed a complaint in this Court, and on January 5, 2021, the Court reversed and remanded for further proceedings. AR 2066. An ALJ held a hearing on May 16, 2022, and issued an unfavorable decision on June 1, 2022. AR 2001, 2087. The Plaintiff filed a complaint in this Court, and the case was remanded under sentence six because of irregularities in the hearing recording process. AR 2118, 2120.

On August 2, 2023, an administrative hearing was held, and the ALJ issued an unfavorable decision on September 18, 2023. AR 1939–51. This Court reopened the remanded case, and the parties filed an agreed motion to remand. AR 3071. On November 27, 2024, a hearing was held on remand, and the same ALJ issued an unfavorable decision on April 9, 2025. AR 2954–73. The ALJ's April 9, 2025 decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). On August 4, 2025, the Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking judicial review under 42 U.S.C. § 405(g). The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 20, 26, 29.

## THE ALJ'S DECISION

For purposes of disability insurance benefits, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 404.1512.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 2, 2010, through her date last insured of December 31, 2013. AR 2957.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of sciatica, a headache disorder, an unspecified neurocognitive disorder, a schizoaffective disorder, an affective disorder, and a post-traumatic stress disorder. AR 2957.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination

with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 1.00, 1.15, 1.16, 11.02, 12.03, 12.04, and 12.15. AR 2958–61.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520(e). In this case, the ALJ found the Plaintiff could perform a limited range of light work, including a limit to a moderate noise environment or less, and assessed the following mental RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant . . . could understand, remember, and carryout simple instructions to perform simple tasks. The work could not require assembly line type work, or work with strict hourly quotas. The claimant could tolerate occasional interaction with supervisors and coworkers, but could not perform joint or tandem tasks with coworkers. The claimant could not perform work that required sustained public interaction, but the claimant could make simple work-related decisions and tolerate occasional changes in routine work setting, where changes were explained in advance.

AR 2961.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff was unable to perform any past relevant work. AR 2971.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found

that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of office helper, mail clerk, and routing clerk. AR 2972–73.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and

must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

Seeking reversal and remand, the Plaintiff argues that the ALJ erred by not considering three checkbox limitations in social interaction opined by the state agency reviewing psychologists and by formulating an RFC for more than the "minimal" social interaction included in their narrative opinion.[1] The Commissioner responds that the ALJ's RFC is supported by substantial evidence and that the ALJ provided a sufficient explanation to create a logical bridge between the record evidence and the RFC. The Court agrees with the Commissioner and finds no error in the ALJ's decision that would require remand.

The Court begins with the relevant portions of the state agency reviewing psychologists' opinions invoked by the Plaintiff. On September 18, 2013, state agency reviewing psychologist Dr. Gange found that the Plaintiff was "moderately" limited in three areas of social interaction: "the ability to interact appropriately with the general public," "the ability to accept instructions and respond appropriately to criticism from supervisors," and "the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." AR 145.[2] Dr.

[1] In her reply brief, the Plaintiff abandons a second substantive basis for remand related to the opinion of Dr. Auvenshine.

[2] The Plaintiff does not cite the first moderate limitation—a limitation in "the ability to interact appropriately with the general public"— and does not argue that the ALJ did not adequately accommodate this moderate limitation.

Gange found that she was "not significantly limited" in the other two social interaction areas of "the ability to ask simple questions or request assistance" and "the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." *Id.* In the narrative mental RFC "additional explanation," the Dr. Gange wrote: "[The Plaintiff] retains the ability to complete a simple work routine in a low stress work environment that only requires *minimal* social interaction with the public and/or coworkers." AR 146 (emphasis added). On reconsideration, state agency reviewing psychologist Dr. Pressner made the same findings with the additional "moderate" checkbox finding for "the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." AR 158–59, 160.

In the third ALJ decision, dated July 2, 2019, which discussed these state agency psychologists' reports, the ALJ assessed a mental RFC for the ability to "understand, remember and carry out simple instructions and make simple work-related decisions. The claimant could sustain an ordinary routine without special supervision, and could tolerate occasional changes in the work setting. She could tolerate occasional interaction with coworkers and supervisors, and no interaction with the public." AR 1498. In formulating the mental RFC, the ALJ did not discuss the state agency psychologists' moderate checkbox limitations but gave "great weight" to their narrative opinion. AR 1502.

On January 5, 2021, this Court reversed and remanded for further proceedings. The Court found that it was harmful error for the ALJ to have failed to include the moderate checkbox limitations in the RFC and the hypothetical questions to the vocational expert without explanation. AR 2075. And the Court found that it was not proper for the ALJ to rely only on the state agency psychologists' narrative opinion that did not "adequately encapsulate and translate the psychological consultants' observations . . . because the narrative opinion only touches on the

*quantity* of interactions between [the Plaintiff] and her coworkers or supervisors, while the check-box limitations describe the *quality* of the interactions." *Id.* In support, the Court cited two records showing behavioral extremes. AR 2076 (citing AR 652–53 ("becomes irritable when family or people talk to her); 463 ("gets angry easily and flies off the handle")). The Court also found the ALJ erred by failing to explain why she assigned a less restrictive limitation of "occasional" interaction with supervisors and co-workers in lieu of the more restrictive limitation of "minimal" interaction with supervisors and co-workers in the narrative opinion when the ALJ had given the narrative opinion great weight. AR 2077.

In the current April 9, 2025 ALJ decision before the Court, the ALJ included the following limitations in the mental RFC. The ALJ found that the Plaintiff "could understand, remember, and carryout simple instructions to perform simple tasks." AR 2961. However, "[t]he work could not require assembly line type work, or work with strict hourly quotas." *Id.* For working with supervisors and coworkers, the ALJ found the Plaintiff "could tolerate occasional interaction with supervisors and coworkers, but could not perform joint or tandem tasks with coworkers." *Id.* For interacting with the public, the ALJ found the Plaintiff "could not perform work that required sustained public interaction." *Id.* The ALJ found the Plaintiff "could make simple work-related decisions and tolerate occasional changes in routine work settings, where changes were explained in advance." *Id.*

In the mental RFC discussion, the ALJ wrote the following about the state agency psychologists' opinions invoked by the Plaintiff on this appeal:

> As for interactive limitations, and noting that part of the remand dealt with the State agency psychological consultant terminology (i.e. *minimal*), the undersigned notes that this *is not a defined vocationally relevant term and not afforded any weight*; the undersigned instead limited the claimant to "occasional" interaction, a defined term as *noted at the hearing*, with supervisors and coworkers, adding additional limitations with joint/tandem tasks with coworkers which fully accounted for any

> potential anxiety, mood issues, or psychological symptomology. It is imperative to note that at no point was the claimant ever abnormally behaved such that interaction at the occasional level would be precluded, the record noting no exacerbatory issues even while noncompliant with treatment between December 2010 and 2013 when she returned for medications. Further, the claimant operated a motor vehicle in her community without documented issue, she confirmed that she shopped regularly, the record even indicating that she lived with others, and engaged in an intimate relationship, getting pregnant during a period when she alleged that she was so severely limited socially that she would have been precluded from all sustained work.

AR 2967–68 (emphasis added).

In this appeal, the Plaintiff makes two arguments regarding the ALJ's treatment of the state agency reviewing psychologists' opinions. First, the Plaintiff faults the ALJ for not specifically discussing three of the moderate checkbox limitations in social interaction. Second, the Plaintiff argues that the ALJ erred by finding that the Plaintiff could tolerate "occasional" interaction with supervisors and coworkers in contrast with the more restrictive "minimal" social interaction opined by the state agency psychologists. However, given the ALJ's explanation for including qualitative limitations in the mental RFC, the explanation for rejecting the term "minimal," and the ALJ's thorough discussion of the mental health records in formulating the RFC, the Court finds no error requiring remand.

Under the regulations applicable to the Plaintiff's claim, which was filed before March 27, 2017, an ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. § 404.1527(c). Medical opinions are weighed by considering whether there is an examining relationship; whether there is a treatment relationship; supportability ("We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim . . . ."); consistency; and specialization. *Id.* § 404.1527(c)(1)–(6). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why

the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). As noted above, an ALJ "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. If the evidence does not support the conclusion, we cannot uphold the decision." *Beardsley*, 758 F.3d at 837 (cleaned up).

The Court begins with the moderate checkbox limitations in social interactions. The Plaintiff argues that the ALJ erred in not specifically discussing the "moderate" checkbox limitations in the ability to "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." AR 158–159. The Plaintiff contends that these moderate limitation findings are evidence that could have resulted in her being found disabled. *See* Pl. Br. 8, ECF No. 20 ("potentially disabling opinions of moderate 'checkbox' limitations"). Specifically, she argues that the RFC is devoid of any accommodation for the Plaintiff's propensity for "behavior extremes" or inappropriate responses to supervisory criticisms. However, as argued by the Commissioner, the agency's regulations provide that a person who has a "moderate" limitation in a particular area of functioning has a "fair" ability to function in that area. 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(2)(c).[3] In other words, the state agency psychologists' assessment of "moderate" limitations in those three areas of social interaction means that the consultants believed the Plaintiff's ability in each was "fair."

[3] These revised rules governing evaluation of mental impairments that became effective in January 2017 apply in this case to the state agency reviewing psychologists' opinions. *See* SSA, *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138, fn. 1 (Sept. 26, 2016).

Although this Court previously found in its July 2, 2019 Opinion and Order that the third ALJ decision erred by not accounting for these moderate checkbox limitations, the current ALJ decision now incorporates the qualitative aspects of the Plaintiff's social limitations in assessing the RFC such that the omission of a specific discussion of the moderate checkbox limitations is not a remandable error. In the RFC, the ALJ excluded all joint or tandem tasks with coworkers to account for the Plaintiff's anxiety, mood issues, or other psychological symptoms. AR 2961, 2968. The ALJ further restricted the Plaintiff to low stress work by excluding assembly and quota-driven work with no more than occasional interaction with supervisors and coworkers and no sustained interaction with the public. AR 2961, 2967–68; *see Lindsi M.J. v. Bisignano*, No. 1:24-CV-408, 2026 WL 850355, at *5 (N.D. Ind. Mar. 27, 2026) (finding that even a restriction to "frequent" social interaction adequately accounted for the plaintiff's "moderate" limitation in social functioning, given that such a restriction was "an appreciable limitation—a reduction in exposure of 33% to 66% compared to a non-limited individual—" and therefore sufficient to account for the "fair" functioning explained in 20 C.F.R. § 404, Subpt. P, App'x 1, § 12.00(F)(2)(c)).

As discussed in detail below, the ALJ's RFC analysis extensively discussed the evidence of normal mental status findings and other findings accommodated by the RFC limitations. As for the Plaintiff's argument that the ALJ failed to account for behavioral extremes in the RFC, the Court addresses that evidence below in the context of the narrative opinions and declines to reweigh the evidence properly addressed by the ALJ. Thus, the assessed RFC demonstrates that the ALJ accounted for both the quantitative and qualitative aspects of the Plaintiff's social limitations in interacting with supervisors and coworkers opined in the moderate checkbox limitations.

This case is also distinguishable from the Seventh Circuit Court of Appeals decisions in *DeCamp*, *Varga*, and *Yurt* cited by the Plaintiff, in each of which the court remanded because the ALJ did not discuss moderate checkbox limitations. In *DeCamp v. Berryhill*, the ALJ omitted any discussion of the state agency psychologist's checkbox limitations for concentration, persistence, and pace in both the decision and the hypothetical posed to the vocational expert. 916 F.3d 671, 676 (7th Cir. 2019). The ALJ relied instead on the state agency psychologist's narrative opinion, which did not encompass the checkbox limitations; the Court held that, even if an ALJ relies on the narrative opinion, the ALJ is still required to account for limitations elsewhere in the record, including the checkbox limitations. *Id.* (citing *Varga v. Colvin*, 794 F.3d 809, 814–16 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014)). Here, as discussed more below, the ALJ did not rely on the narrative opinion for "minimal" social interaction but instead relied on the full record and addressed the qualitative aspects of the Plaintiff's social limitations in formulating the RFC. In other words, although the ALJ did not specifically mention the checkbox limitations, the ALJ formulated an RFC that accounts for them. The ALJ excluded all joint or tandem tasks with coworkers, assembly line type work, or work with strict hourly quotas. In combination with those limitations, the ALJ further restricted the Plaintiff to only occasional interaction with supervisors and coworkers and no sustained interaction with the public. Moreover, there is no evidence that the ALJ "rejected the moderate checkbox limits," as asserted by the Plaintiff. Pl. Br. 14. Again, the RFC accounted for both the quantitative and qualitative aspects of the Plaintiff's social limitations.

*Yurt* is distinguishable because the ALJ in that case relied on the general narrative opinion for the ability to perform "unskilled work" in an environment with fewer people and low levels of stress and the ability to "related at least on a superficial basis . . . with co-workers and

supervisors," while the numerous moderate checkbox limitations were much more specific. 758 F.3d at 854–55. In addition, the hypothetical to the vocational expert did not account for the moderate limitations. *Id.* 858. Here, the ALJ did not rely on the narrative opinion that the Plaintiff could have "minimal" social interaction with coworkers and the public but instead formulated an RFC based on both the Plaintiff's qualitative and quantitate limitations supported by the record and included them in the hypotheticals. *Varga* is also distinguishable. There, the issue was that there was no narrative opinion such that the court found the hypothetical to the vocational expert "must take into account any moderate difficulties in mental functioning found in" the checkbox sections. 794 F.3d at 816. Again, the ALJ here incorporated limitations in the RFC that account for the moderate checkbox limitations found by the state agency psychologists.

The Court now turns to the Plaintiff's second argument that the ALJ failed to provide an "evidence-based rationale for rejecting" the state agency consultative psychologists' narrative opinion limiting the Plaintiff to "minimal social interaction with the public and/or coworkers." The Plaintiff notes that in a prior hearing, a vocational expert testified that a capacity for only "minimal" interactions with colleagues would be less than "occasional" and would result in an individual's inability to make it through a training period at the start of a job. *See* AR 3035–36. The Plaintiff also cites cases in which the court found both that the word "brief" is not synonymous with "occasional" and that the ALJ did not explain why a limitation to "occasional" interaction was adopted. *See* Pl. Br. 9–10[4] (citing *Hulett v. Acting Comm'r of Soc. Sec.*, No. 3:21-CV-971, 2022 WL 18399609, at *4 (N.D. Ind. Dec. 19, 2022) (finding a strong suggestion "that experts in the field of employment classification and disability placement do not consider brief as

[4] The Court does not consider cases for which the Plaintiff did not provide a citation to a published reporter, provide a citation to an unpublished service such as Lexis or Westlaw, or include a copy of the unpublished decision with her brief. *See* Pl. Br. pp. 9–10, 15; N.D. Ind. L.R. 7-1(f).

being interchangeable with occasional" and noting the "absence of any evidence of . . . reasoning" in the ALJ decision intending "occasional to mean brief" (citations omitted)); *Joshua J.H. v. Kijakazi*, 2:21-CV-837, 2022 WL 2905673, at *2–3 (N.D. Ill. July 22, 2022) (finding that the ALJ failed to explain how the state agency reviewer's assessment of "superficial" interactions with coworkers and supervisors, to which the ALJ gave "great weight," translated into "occasional" interactions for purposes of the RFC).

The Court finds that the ALJ complied with the regulations by considering and weighing the narrative opinion and by giving a good explanation for why the opinion was not adopted. *See* 20 C.F.R. § 404.1527; SSR 96-8p, 1996 WL 374184, at *7. The primary difference between the instant case and those cited cases as well as this Court's July 2, 2019 opinion reviewing the third ALJ decision is that the current ALJ gave the opinion of "minimal" social interaction *no weight* because it is not a vocationally relevant term. In other words, the ALJ did not equate "occasional" with "minimal" as the Plaintiff suggests. *See* AR 2967–68. This Court has previously upheld an ALJ rejecting a limitation by a state agency reviewing psychologist that was not made in vocationally relevant terms for purposes of formulating an RFC. *Wallace v. Bisignano*, No. 1:24-CV-517-TLS, 2026 WL 406657, at *4 (N.D. Ind. Feb. 12, 2026) (citing *Leisgang v. Kijakazi*, 72 F.4th 216, 221 (7th Cir. 2023) (finding "the ALJ rightly noted" that the psychologist's opinion that claimant would have "some difficulty" with certain tasks was "vague"); *Reynolds v. Kijakazi*, 25 F.4th 470, 473–74 (7th Cir. 2022) (affirming where the ALJ determined that the state agency psychologist's opinion that the claimant "will likely struggle" with social interaction was unpersuasive because it was vague and speculative); *Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021) (noting that the treating psychologist's opinion that the

claimant experienced "difficulties" in broad areas of functioning "did not suggest any specific work-related restrictions")).

The cases are also distinguishable because the ALJ in the instant case gave a reasoned explanation for the limitation to "occasional" interaction with coworkers and supervisors, in both the paragraph quoted above directly addressing the state agency psychologists' opinions and throughout the mental RFC analysis discussing the Plaintiff's medical records and the medical opinions. AR 2965–68, 2969–70. In arguing that the ALJ's analysis is unreasonable, the Plaintiff is essentially asking the Court to reweigh the evidence, which is not within the scope of this Court's review.[5] *See Warnell v. O'Malley*, 97 F.4th 1050, 1052–53 (7th Cir. 2024) (citing *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).

The ALJ's first explanation is that limiting the Plaintiff to "occasional" interaction as well as no joint or tandem tasks with coworkers "fully accounted for any potential anxiety, mood issues, or psychological symptomatology." AR 2967–68. In addition, the ALJ reasoned: "It is imperative to note that at no point was the [Plaintiff] ever abnormally behaved such that interaction at the occasional level would be precluded, the record noting no exacerbatory issues even while noncompliant with treatment between December 2010 and 2013 when she returned for medications." AR 2968. The Plaintiff contends that the notation that she never behaved abnormally is contracted by the record, noting the two records cited by this Court on its earlier review of the third ALJ decision: "the record suggests that Ms. Brown 'becomes irritable when family or people talk to her' (AR 652–63 (1/16/2023)) and 'gets angry easily and flies off the handle' (R. 463 (9/10/2010))." Pl. Br. 15; *see* AR 2076. The Court notes that the first citation

[5] Although the Court is skeptical that the ALJ's reasoning regarding the Plaintiff's decision to get pregnant reflects on the Plaintiff's ability to interact with coworkers or supervisors, the Court declines to address the analysis further as there is sufficient other analysis in the decision to support the ALJ's mental RFC regarding social interaction.

comes from a treatment note on the Plaintiff's mood regarding noise and the notation that she "[a]dmitted she prefers the house to be quiet and becomes irritable when family or people talk to her." AR 652. The Plaintiff cites additional records that clinicians observed "anxious and irritated mood," (AR 549 (6/1/2009) (Ex. 1F/181), 993 (11/24/2014) (Ex. 14F/28), 1486 ("appeared somewhat anxious (but not agitated)") (3/7/2017) (Ex. 16F/5)), poor insight and judgment (AR 451 (10/7/2010) (Ex. 1F/83), 503 (7/28/2010) (Ex. 1F/135), 993 (11/24/2014) (Ex. 14F/28)), manic episodes with some characterized by intense irritability and anger (AR 477 (8/17/2009) (Ex. 1F/109), 502 (7/22/2010) (Ex. 1F/134), 695 (9/9/2013) (Ex. 3F/2), 1011 (10/21/2014) (Ex. 14F/46)), and auditory hallucinations with paranoid delusions (AR 946 (10/20/2014) (Ex. 11F), 993 (11/24/2014) (Ex. 14F/28), 1011 (10/21/2014) (Ex. 14F/46)). *See* Pl. Br. 15. Although the Commissioner did not directly discuss these cited facts, the Court agrees with the Commissioner that the Plaintiff is asking the Court to reweigh the evidence.

These citations by the Plaintiff are only a handful of favorable findings, with some after the date last insured, yet the Plaintiff does not acknowledge the remainder of the findings from the same records cited and discussed by the ALJ that contain findings consistent with the RFC. *See* AR 2965–69. To start her discussion of the Plaintiff's mental RFC, the ALJ noted that the Plaintiff's subjective allegations "included but were not limited to anxiety, paranoia, mood abnormalities, audio/visual hallucinations, suicidal/homicidal ideations, a proclivity to isolate, and/or severe cognitive deficits." AR 2965. The ALJ then commented that the mental state examination (MSE) objective findings "were rather benign and stable," discussing the records at length. *Id.* (citing Ex. 1F/132 (AR 500); Ex. 1F/108 et seq. (AR 476)). For example, the ALJ noted that at the initial MSE, the Plaintiff "was agitated/irritated at the therapy/treatment process, but with appropriate compliance the nurse noted that the [Plaintiff] was 'clearly improved.'" *Id.*

(citing Ex. 1F/108 et seq. (AR 476)). The ALJ discussed the findings at the Benefits Exam, AR 2965–66 (citing Ex. 1F/94 et seq (AR 462); Ex. 2F/34 et seq. (AR 586)); follow up records in October 2010, AR 2966 (citing Ex. 1F/82 et seq. (AR 450)); a later 2010 MSE and the final MSE, *id.* (citing Ex. 1F/41, 45, 48–49, 60–62 ((AR 409, 413, 416–17, 428–30)); the final 2011 records, *id.* (citing Ex. 2F/110–11, 115–16, 123, et seq. (AR 662–63, 667–68, 675)); 2012 and 2013 records, including those showing unremarkable findings despite the Plaintiff being noncompliant with medications, *id.* (citing Ex. 2F/102 et seq. (AR 654)); records following the Plaintiff restarting medications, AR 2966–67 (citing Ex. 2F/64, 74–76, 83, 89–91 (AR 616, 626–28, 635, 641–43); Ex. 6F (AR 811); Ex. 2F (AR 553); 4F/8, 30, et seq. (AR 707, 729)); the psychological consultative examination, AR 2967 (citing Ex. 3F (AR 694)) ("The claimant . . . endors[ed] a plethora of severe psychological issues, despite the previously noted benign objective records cited immediately above, where [no] exacerbatory event had occurred despite a very long compliance gap in treatment); subsequent 2013 records, *id.* (citing Ex. 4F/17 (AR 716); 5F (AR 742)); and records closely dated after the date last insured, finding "no abnormalities that would have warranted greater limitations were supported," *id.* (citing Ex. 8F (AR 919); 14F–21F (AR 966–1032, 1379–1489, 1793–1804, 2468–2693); 23F (AR 2695–2949), 24F (AR 3331–3359)). The Plaintiff does not dispute the weight given to any of these records much less acknowledge the ALJ's discussion of these records or the ALJ's specific citations in support of various aspects of the mental RFC.

The Plaintiff limits her criticism of the ALJ's mental RFC discussion to the paragraph addressing the state agency reviewing psychologists' narrative opinion without acknowledging the ALJ's RFC complete analysis. Through a detailed discussion, the ALJ found that, based on the full record of the Plaintiff's social limitations and mental health treatment, the Plaintiff

retained the ability to occasionally interact with coworkers and supervisors in a low stress environment with additional qualitative limitations. AR 2968. Thus, substantial evidence supports the ALJ's decision, and the Court affirms the decision. *See Prill v. Kijakazi*, 23 F.4th 739, 746 (7th Cir. 2022).

## CONCLUSION

For the reasons stated above, the Court DENIES the relief sought in the Plaintiff's Brief [ECF No. 20] and AFFIRMS the decision of the Commissioner of the Social Security Administration. The Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT stating:

> Judgment is entered in favor of the Defendant Commissioner of Social Security and against the Plaintiff Felicia N. Brown, who shall take nothing by way of the complaint.

SO ORDERED on September 28, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT